IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANDREW SAVIVANH,<br>    Plaintiff, | |
| v. | CASE NO.:   4:24-cv-77 |
| I.Q. DATA INTERNATIONAL, INC. and<br>LIBERTY MUTUAL INSURANCE COMPANY<br>    Defendant. | |

## COMPLAINT AND JURY DEMAND

Plaintiff Andrew Savivanh ("Plaintiff"), by and through his undersigned counsel, brings this lawsuit against I.Q. Data International, Inc. ("IQ") and Liberty Mutual Insurance Company ("Liberty") and alleges the following violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) and the Texas Finance Code (§ 392.001, *et seq.*).

## JURISDICTION

1. This Court has jurisdiction pursuant to 15 U.S.C. sec. 1692k(d) and 28 U.S.C. § 1331.

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this District, and where Plaintiff resides in this State and this District.

4. IQ is subject to the collection laws of the state of Texas because Plaintiff was located in the state of Texas at all times relevant hereto and IQ directed its actions toward Plaintiff in Texas and purposefully availed itself of the laws of Texas and anticipated being hailed into court in Texas.

1

## **PARTIES**

5. Plaintiff is a natural person, who at all relevant times resided in the State of Texas, County of Tarrant.

6. Plaintiff is a natural person obligated or allegedly obligated to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes. Specifically, Plaintiff is allegedly obligated to pay an account related to apartment housing that Plaintiff used for himself, personally and not for any business or commercial purpose.

7. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

8. IQ is a Washington corporation with principal offices situated in Everett, Washington.

9. IQ is not registered to do business in Texas, but may be served via its registered agent in Washington, Corporation Service Company, at 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501.

10. IQ is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and is a "third party debt collector" as defined by Tex. Fin. Code § 392.001(7).

11. Liberty Mutual Insurance Company ("Liberty") is a foreign entity that can be served in the state of Texas via its registered agent, Corporation Service Company, at 211 E. 7th, Suite 620, Austin, TX 78701.

12. Liberty is liable for acts committed by IQ pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and one or more bonds secured pursuant thereto, bond numbers 016065812, as well as any other applicable law.

## FACTUAL ALLEGATIONS

13. Sometime prior to the filing of this Complaint, Plaintiff allegedly incurred a financial obligation that was used primarily for personal, family or household purposes (hereinafter the "Account").  Specifically, the Account was an account related to apartment housing that Plaintiff used for himself, in a personal nature and not for any business or commercial purpose.

14. The Account allegedly went into default when a dispute arose with the original creditor on the Account as to the validity of the charges Plaintiff's prior landlord attempted to charge him after Plaintiff moved out of his apartment.

15. Prior to the Account allegedly going into default, Plaintiff properly notified his prior landlord of his early termination of his lease and followed all instructions such that when he moved out a zero ($0) balance should have been on his account.

16. Unbeknownst to Plaintiff, the landlord created more than $600 worth of charges and referred Plaintiff's Account to IQ for collection.

17. Plaintiff was unaware of the charges until IQ called Plaintiff on or about December 21, 2023.

18. After the Account allegedly went into default, the Account was placed with or otherwise transferred to IQ for collection.

19. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

20. The Plaintiff disputes the Account.

21. The Plaintiff requests that IQ cease all further communication on the Account.

22. IQ's collector(s) were employee(s) of IQ at all times mentioned herein.

23. IQ acted at all times mentioned herein through its employee(s).

24. During the one year prior to the date of the filing of this Complaint, on approximately December 21, 2023, IQ and/or representative(s), employee(s) and/or agent(s) of IQ communicated with Plaintiff via telephone at which time(s) IQ attempted to collect the Account.

25. IQ first called Plaintiff on approximately December 21, 2023, but Plaintiff could not answer the call because he was at work.

26. At a more convenient time on December 21, 2023, Plaintiff called back to IQ to inquire as to why they had called him.  This call was the first communication with IQ regarding the Account.

27. In that call with Plaintiff on approximately December 21, 2023, Plaintiff was surprised to learn that his prior landlord had applied charges to his account leaving him with a balance and so Plaintiff asked questions about the charges.

28. Specifically, Plaintiff requested that IQ mail or email Plaintiff with a list of the specific charges IQ was attempting to collect.

29. However, instead of freely giving Plaintiff the information he requested, IQ belittled Plaintiff by mocking him for calling and asking for validation of the debt before offering to pay the debt.

30. IQ refused to give Plaintiff anything in writing about the Account.

31. This call occurred during the 30-day period of time in which Plaintiff was entitled to request validation of the debt.

32. IQ told Plaintiff that it would give Plaintiff "one hour" to come up with the money or else it would report the Account to one ore more of the three major credit reporting

agencies (i.e. Equifax, Experian or Trans Union) and that Plaintiff would thereafter be unable to get an apartment or a mortgage.

33. As of the filing of this Complaint, IQ has not reported the Account to a credit reporting agency.

34. IQ's threat to report the Account to a credit reporting agency if Plaintiff did not repay the Account within one hour was a false and misleading statement as IQ did not have the intention of reporting the Account to a credit reporting agency that day.

35. Further, the threat to report the Account to a credit reporting agency if Plaintiff did not repay the Account within one hour overshadowed Plaintiff's right to a 30-day period in which he could dispute and/or request validation of the debt IQ was attempting to collect.

36. IQ also belittled Plaintiff by saying something substantially similar to "you called a debt collection agency without any money to pay?"

37. The telephone call with Plaintiff conveyed information regarding the Account directly or indirectly to the Plaintiff.

38. The telephone call with Plaintiff described herein constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

39. The only reason that IQ and/or representative(s), employee(s) and/or agent(s) of IQ communicated with Plaintiff was to attempt to collect the Account.

40. IQ did not within five days of the first communication with Plaintiff, nor ever during its time attempting to collect on the Account prior to the filing of this lawsuit, provide any of the disclosures it was required to make to Plaintiff pursuant to 15 U.S.C. § 1692g.

41. All of the conduct by IQ and/or employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

## RESPONDEAT SUPERIOR

42. The representative(s) and/or collector(s) at IQ were employee(s) and/or agents of IQ at all times mentioned herein.

43. The representative(s) and/or collector(s) at IQ were acting within the scope and/or course of their employment at all times mentioned herein.

44. The representative(s) and/or collector(s) at IQ were under the direct supervision and/or control of IQ at all times mentioned herein.

45. The actions of the representative(s) and/or collector(s) at IQ are imputed to their employer, IQ.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY I.Q. DATA INTERNATIONAL, INC.

46. The previous paragraphs are incorporated into this Count as if set forth in full.

47. The act(s) and omission(s) of IQ and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692(d)(2) and 15 U.S.C. § 1692e(2)(A)&(B)&(5)&(8)&(10) and 1692g(a).

48. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs.

## COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE § 392.001, et seq. BY I.Q. DATA INTERNATIONAL, INC.

49. The previous paragraphs are incorporated into this Count as if set forth in full.

50. The act(s) and omission(s) of IQ and their representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code § 392.302(1) and §392.304(a)(8)&(14)&(19).

51. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against IQ enjoining it from future violations of the Texas Finance Code as described herein.

52. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from IQ.

## COUNT III:  IMPUTED LIABILITY OF LIBERTY MUTUAL INSURANCE COMPANY FOR I.Q. DATA INTERNATIONAL, LLC'S VIOLATIONS OF TEXAS FINANCE CODE § 392.001, *et seq*.

53. The previous paragraphs are incorporated into this Count as if set forth in full.

54. The act(s) and omission(s) of IQ and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code § 392.302(1) and §392.304(a)(8)&(14)&(19) are imputed to Liberty pursuant to Tex. Fin. Code § 392.102.

55. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Liberty.

## JURY TRIAL DEMAND

56. The Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court grant the following:

57. Judgment in favor of Plaintiff and against IQ, as follows:

    a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2) in the amount of $1,000.00;

c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d. Actual damages pursuant to Tex. Fin. Code § 392.403(a)(2) and pursuant to the common law of Texas;

e. Reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403(b);

f. Permanently enjoin IQ following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code § 392.403(a)(1);

g. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
The Wood Firm, PLLC
209 Hubbard Dr.
Heath, TX 75032
TEL: 214-914-8374
FAX: 888-598-9022
EMAIL: jeff@jeffwoodlaw.com
*Attorney for Plaintiff*